# STATE OF MICHIGAN

# COURT OF APPEALS

REBECCA WAREING,

      Plaintiff-Appellee,

v

ELLIS PARKING COMPANY, INC. and ELLIS
PARKING COMPANY DETROIT, INC.,

      Defendants-Appellants.

UNPUBLISHED
April 12, 2016

No. 325890
Ingham Circuit Court
LC No. 2013-001257-NO

Before: BOONSTRA, P.J., and WILDER and METER, JJ.

PER CURIAM.

This action stems from a slip and fall injury that occurred in a parking garage managed by defendants. At issue is the trial court's denial of defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). Defendants appeal by leave granted.[1] We reverse and remand.

## I. FACTUAL BACKGROUND

On the morning of March 27, 2013, plaintiff parked her vehicle on the exposed rooftop of the parking garage. The prior day, daytime temperatures had exceeded 40 degrees, but overnight the temperatures fell below freezing, where they remained when plaintiff parked her car. There were numerous open spaces, and plaintiff parked across two spaces, with the driver's side of her vehicle adjacent to a concrete barrier. On the pavement next to the concrete barrier, there was a small mound of snow. The pavement in the area was slightly sloped, appeared wet in places, and contained puddles, along with a floor-drain. Plaintiff worked in a nearby law firm, which paid a stipend for her parking space on the rooftop. She could have elected to park in the covered portion of the garage, but she would have to pay the cost in excess of her parking stipend.

After parking, plaintiff exited her vehicle and took approximately three steps before falling on what she characterized as "clear invisible ice." She called her coworkers, who came to

---

[1] *Wareing v Ellis Parking Co Inc*, unpublished order of the Court of Appeals, entered May 26, 2015 (Docket No. 325890).

her assistance. According to several of plaintiff's coworkers, and defendants' employees, there was no visible ice accumulation on the pavement where plaintiff slipped. The area was unsalted. Emergency services transported plaintiff to the hospital where she underwent surgery on her leg. One of the first responders slipped on the ice but did not fall.

Plaintiff filed suit, asserting negligence claims against defendants based on premises liability. Defendants filed a motion for summary disposition, arguing that the icy condition was an open and obvious danger. The trial court denied defendants' motion, holding that there was a genuine issue of material fact as to whether the icy condition was open and obvious. Defendants subsequently sought and were granted leave to appeal in this Court.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(10). *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). A motion under that rule tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). We "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Summary disposition is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Greene v AP Prods, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006).

### B. OPEN AND OBVIOUS DOCTRINE

#### 1. AVERAGE PERSON STANDARD

Defendants argue that, contrary to the trial court's holding, the potential danger of icy conditions in the parking garage at the time plaintiff fell was open and obvious. We agree.

"In a premises liability action, a plaintiff must prove (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached the duty, (3) that the defendant's breach of the duty caused the plaintiff's injuries, and (4) that the plaintiff suffered damages." *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 712; 737 NW2d 179 (2007). The duty owed to a visitor by the landowner depends on whether the visitor was a trespasser, licensee, or invitee at the time of the injury. *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013).

It is clear and undisputed that plaintiff was a business invitee. Generally, a premises possessor has a duty to exercise reasonable care to protect invitees from unreasonable risks of harm caused by dangerous conditions on the land. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). However, the premises possessor is not an absolute insurer of an invitee's safety and generally does not have a duty to protect invitees from open and obvious dangers. *Kennedy*, 274 Mich App at 712-713. "Generally, the hazard presented by snow and ice is open and obvious, and the landowner has no duty to warn of or remove the hazard." *Buhalis v*

*Trinity Continuing Care Servs*, 296 Mich App 685, 694; 822 NW2d 254 (2012) (citation omitted).

"The test for an open and obvious danger focuses on the inquiry: Would an average person of ordinary intelligence discover the danger and the risk it presented on casual inspection?" *Price v Kroger Co of Mich*, 284 Mich App 496, 501; 773 NW2d 739 (2009). The open and obvious nature of hazards, including ice and snow, must be evaluated based on the surrounding circumstances. See *Hoffner v Lanctoe*, 492 Mich 450, 464; 821 NW2d 88 (2012). Specifically, in deciding whether "alleged 'black ice' " conditions are open and obvious, it must be considered whether there were "indicia of a potentially hazardous condition" based on "the specific weather conditions":

> [T]he slip and fall occurred in winter, with temperatures at all times below freezing, snow present around the defendant's premises, mist and light freezing rain falling earlier in the day, and light snow falling during the period prior to the plaintiff's fall in the evening. These wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection. [*Janson v Sajewski Funeral Home, Inc*, 486 Mich 934, 935 (2010) (quotation marks omitted), discussing *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474; 760 NW2d 287 (2008).]

In the instant case, viewing the evidence in the light most favorable to plaintiff, we accept that the ice was not visible upon casual inspection. However, there were surrounding indicia of a potentially hazardous condition that would allow a person of average intelligence to foresee the potential danger of icy conditions. First, looking to some of the photographs submitted below, we note that plaintiff's parking space was on a slight incline, and a drain is plainly visible at the bottom of the incline near the rear of plaintiff's vehicle. Despite plaintiff's testimony that she did not see any snow, the remnants of a partially melted mound of snow were plainly visible along the concrete barrier that was next to the driver's side of plaintiff's vehicle. And as depicted in several of the photographs, there were nearby puddles. Plaintiff drove her car through these puddles, as evidenced by tire tracks. Plaintiff's expert meteorologist averred that the temperature the day before the accident reached 41 degrees, causing snow to melt, before the temperature dropped below freezing overnight, where it remained at the time of accident. "[A] recent thaw followed by consistent temperatures below freezing" is indicative, to a reasonably prudent person, that there exists a danger of icy conditions. See *Cole v Henry Ford Health Sys*, 497 Mich 881 (2014). Indeed, although ice, i.e., *frozen* water, may not have been visible, numerous photographs demonstrate that the parking surface was both visibly wet and unsalted, which, given the temperature, would have led a reasonable person of ordinary intelligence to conclude that the pavement might be icy—even if visible accumulations were not readily apparent.

> Wintry outdoor conditions are the result of a natural phenomenon and are present over broad areas of territory, not merely on the property of a single person or entity. These widespread weather conditions draw attention to themselves and invite heightened attention to the hazards they create. [*Quinto v Woodward Detroit CVS, LLC*, 305 Mich App 73, 79; 850 NW2d 642 (2014).]

Here, the temperature change, the incline and drain, the puddles, the visibly wet surface, the lack of rock salt, and the small mound of snow adjacent to plaintiff's parking space were, taken together, sufficient to allow a person of ordinary intelligence to foresee the possibility of ice on the surface of the parking structure.

Accordingly, we conclude that the trial court erred. At the time of plaintiff's fall, the potential danger of icy conditions in the parking garage was open and obvious.

## 2. SPECIAL ASPECTS

Defendants also argue the danger posed by the icy conditions was not unavoidable because there were other parking spaces on the roof, or because plaintiff could have obtained covered parking by paying the difference between the cost and her stipend. Further, defendants argue, falling on ice does not present an unreasonable risk of severe harm. We agree in both respects.

"[E]xceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited*, extreme situations." *Hoffner*, 492 Mich at 472. A person must be required or compelled to confront a dangerous hazard in order for a danger to be effectively unavoidable such that the open and obvious danger doctrine does not apply. *Id.* at 469. "As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id.* The evidence indicates that plaintiff was not required or compelled to encounter this particular condition, rather she chose to do so. Photographs in the record show that plaintiff took up two parking spaces; other adjacent parking spaces were open. Further, plaintiff was not required or compelled to park in the parking garage at all, let alone to choose to park on its uncovered roof, which was fully exposed to the elements. Thus, the ice hazard was not effectively unavoidable.

Nor was the danger presented unreasonably dangerous. Plaintiff has failed to show that there are "special aspects" of the hazard that create a risk of death or severe injury. See *Lugo*, 464 Mich at 518.[2] See also *Hoffner*, 492 Mich at 473 ("[P]laintiff presented no evidence that the risk of harm associated with the ice patch was so unreasonably high that its presence was inexcusable, even in light of its open and obvious nature."). [3]

---

[2] "[T]he mere ability to imagine that a condition could result in severe harm under highly unlikely circumstances does not mean that such harm is reasonably foreseeable." *Lugo*, 464 Mich at 518-519 n 2.

[3] Having concluded that the dangerous condition was open and obvious, and lacked any special aspects that made it unreasonably dangerous, we need not consider whether defendants either had, or should have had, notice of the condition. The open and obvious nature of the icy condition relieved defendants of any duty to warn plaintiff of the condition, or to protect her from it.

### 3. INVITOR ANTICIPATING HARM

Plaintiff argues that an exception to the open and obvious doctrine applies where harm might occur to an invitee despite knowledge of the hazard. "[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee *unless he should anticipate the harm despite knowledge of it on behalf of the invitee.*" *Riddle v McLouth Steel Prods Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992) (emphasis added).[4] See also *Kennedy*, 274 Mich App at 718 (citing caselaw based on the 2 Restatement Torts, 2d, § 343A, and recognizing that the open and obvious doctrine will not bar a defendant's duty where a condition might cause harm despite its obvious nature).

Reasons that a premises possessor might expect an invitee to be harmed by an obvious condition include scenarios where the invitee's attention is distracted, the invitee might forget the danger or fail to protect himself or herself, or the invitee will choose to encounter the danger because a reasonable person would believe that the reward was greater than the risk. 2 Restatement Torts, 2d, § 343A, comment *f.* Defendants point out that a first responder slipped but did not fall on the ice, but aside from someone who must encounter the ice in the performance of his or her duties, it is not clear that any of the reasons listed above apply to the facts of this case.

### 4. BUILDING CODE

Plaintiff also argues that the open and obvious doctrine cannot be used to avoid the Michigan Building Code, which incorporates the International Property Maintenance Code. We disagree. Although a violation of a building code may constitute "some evidence of negligence, it is not in itself sufficient to impose a legal duty cognizable in negligence." *Summers v City of Detroit*, 206 Mich App 46, 52; 520 NW2d 356 (1994); see also *Corey v Davenport Coll of Bus*, 251 Mich App 1, 9; 649 NW2d 392 (2002) ("With regard to the building code violation allegation in this case, we note that the absence of a handrail deals with proximate causation. Because a duty did not exist in this case because of the open and obvious condition and the lack of a special aspect, we need not reach this issue.").

### III. CONCLUSION

We reverse and remand to the trial court for entry of an order granting defendants summary disposition. We do not retain jurisdiction. As the prevailing parties, defendants may

---

[4] We note that, in cases decided after *Riddle*, our Courts have "broadened the scope of the open and obvious danger doctrine so that it greatly reduced not only the duty to warn, but also the general duty to maintain the premises in a safe condition." *Quinto*, 305 Mich App at 76.

tax costs pursuant to MCR 7.219.

/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter